STATE OF NORTH CAROLINA v. CHARLES RALPH HINSON

No. COA09-748

(Filed 6 April 2010)

**1. Search and Seizure— motion to suppress evidence— methamphetamine lab—precursor chemicals**

The trial court did not err in a manufacturing methampheta-mine and possession of precursor chemicals case by denying defendant's motion to suppress evidence found during the search of his house. The sworn information was competent evidence to support a finding that the equipment and materials observed by an informant were of the type that would be present in a methamphetamine lab that was an ongoing operation that was long term in nature.

**2. Search and Seizure— issuance of warrant—probable cause—staleness of evidence**

The trial court did not err in a manufacturing methampheta-mine and possession of precursor chemicals case by determining that probable cause existed to support the issuance of a search warrant. The magistrate considered not only the three-week old evidence given by an informant, but also observations made just one day before the warrant application was submitted, as well as a lieutenant's opinion based on his experience that an ongoing methamphetamine production operation was present.

**3. Search and Seizure— issuance of warrant—probable cause—totality of circumstances**

The trial court did not err in a manufacturing methampheta-mine and possession of precursor chemicals case by denying defendant's motion to suppress the evidence obtained by the

execution of a search warrant. Based on the totality of circumstances and giving great deference to the magistrate's determination, there was sufficient evidence to support a conclusion of probable cause.

**4. Drugs— manufacturing methamphetamine—motion to dismiss—intent to distribute not necessary element of offense**

The trial court did not err by denying defendant's motion to dismiss the charge of manufacturing methamphetamine. Defendant was not required to prove the additional element of intent to distribute since he was not charged with either preparation or compounding a controlled substance.

**5. Drugs— requested instruction—personal use exception**

The trial court did not err by failing to give a requested instruction on excluding preparation for one's own use from manufacturing methamphetamine. The personal use exception was inapplicable to defendant's charge.

**6. Indictment and Information— variance—plain error**

The trial court committed plain error by instructing the jury that they could find defendant guilty of manufacturing methamphetamine under theories of guilt that were in variance from the indictment. Defendant was granted a new trial on 06 CRS 1602 for manufacture of a controlled substance.

**7. Drugs— possessing precursor chemicals—instruction—actual possession**

The trial court did not err by instructing the jury that they could find defendant guilty of possessing precursor chemicals under the theory of actual possession. Defendant failed to show how the instruction would have misled the jury or that any potential error may have prejudiced defendant. However, the conviction under 06 CRS 1602 for possession of precursor chemicals was remanded for resentencing since it was consolidated for judgment with the conviction under 06 CRS 1603 that was already remanded.

Judge STEELMAN concurring in part and dissenting in part.

Appeal by Defendant from judgment entered 17 October 2008 by Judge James W. Morgan in Superior Court, Cleveland County. Heard in the Court of Appeals 2 December 2009.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Scherer II, for the State.*

*Teddy, Meekins, & Talbert, P.L.L.C., by Anne Bleyman, for Defendant-Appellant.*

McGEE, Judge.

Charles Ralph Hinson (Defendant) was indicted on 13 March 2006 in two separate indictments charging him with manufacturing methamphetamine and possession of precursor chemicals. Defendant was convicted by a jury as charged on 17 October 2008. The trial court consolidated the judgments and Defendant was sentenced to a term of 88 to 115 months in prison. Defendant appeals.

Evidence was presented at a suppression hearing and at trial. The evidence presented tended to show that Defendant and his wife, Pam Hinson, lived at 334 Carpenter's Grove Church Road, Lawndale, located in Cleveland County. Relying on information provided by an informant to Sergeant Tim Johnson of the Lincoln County Sheriff's Office, agents of the State Bureau of Investigation and officers of the Cleveland County Sheriff's Office obtained a warrant to search Defendant's house on 2 March 2006. The warrant was served on 3 March 2006.

Agent Ann Hamlin, a drug chemist with the State Bureau of Investigation, and Sergeant Chris Hutchins of the Cleveland County Sheriff's Office, entered Defendant's house on 3 March 2006 and participated in the search. Agent Hamlin found items in Defendant's house that she felt were consistent with the manufacture of controlled substances. She found powder inside folded filter paper, which she opined to be pseudoephedrine. Agent Hamlin found inside another filter paper a substance that she believed to be methamphetamine and pseudoephedrine. Agent Hamlin also found a gallon-sized milk jug that contained "a two layer liquid" that, after testing, Agent Hamlin testified was methamphetamine and pseudoephedrine. Agent Hamlin testified that testing revealed iodine and red phosphorous in other samples of the folded filter papers. Agent Hamlin further testified that the materials discovered at Defendant's house could be used to manufacture methamphetamine, and it was her opinion that there was a "clandestine methamphetamine laboratory" located at the house.

As a result of the search of Defendant's house, Defendant was charged with manufacturing methamphetamine and possession of

precursor chemicals. Defendant moved to suppress the evidence obtained during the search of his home on the grounds that the search warrant was obtained illegally. Following the suppression hearing, Defendant's motion was denied and trial proceeded. Defendant was found guilty of manufacturing methamphetamine and possession of precursor chemicals.

*Motion to Suppress*

[1] Defendant first argues that the trial court erred by denying his motion to suppress the evidence found during the search of his house. Defendant asserts that the warrant was not supported by probable cause and was therefore defective. We disagree.

Our Court reviews a ruling on a motion to suppress to determine "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "Where, however, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004). We review a trial court's conclusions of law *de novo*. *State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648, *disc. review denied*, 362 N.C. 89, 656 S.E.2d 281 (2007).

In the trial court's order denying Defendant's motion to suppress, the trial court made findings of fact and conclusions of law, including *inter alia*, the following:

5. That on or about February 24th, 2006, [Informant] was arrested for forgery/counterfeiting in Lincoln County, North Carolina, on an arrest warrant obtained by Sgt. Tim Johnson of the Lincoln County Sheriff's Department.

6. At the time of said arrest, Sgt. Johnson told [Informant] that federal authorities [might] step into the investigation of his case. He further informed [Informant] that the only way to help himself with Johnson or with the federal authorities was to provide substantial assistance.

7. Sgt. Johnson had known [Informant] since approximately 1981 when [Informant] was in a youth group led by Johnson. Johnson knew of prior arrests [Informant] had for drugs, obtaining property by false pretenses and other charges.

Johnson also knew that [Informant] had provided information to law enforcement in the past to try to help himself with the charges. The information provided by [Informant] in the past had led to arrests.

. . .

9. [Informant] told Johnson that he knew of methamphetamine dealers in Cleveland and Burke Counties. He provided the names and address of [Defendant] and his wife in Cleveland County.

10. [Informant] had provided information in at least three other cases in Lincoln County that led to arrest[s] on charges involving checks and drugs. The information provided by [Informant] had turned out to be reliable and that while [Informant] himself had been involved in fraudulent activity, information he has provided to law enforcement in efforts toward substantial assistance has been reliable. Sgt. Johnson believed [Informant] to be a reliable confidential information [sic].

11. On or about March 1, 2006, [Informant] told Johnson he had been at the home of [Defendant] on February 28th, 2006, had gone into [D]efendant's kitchen and had seen pills and matches on the counter. Some of the matches had been cut up and placed in a Ziploc bag. The door to the "cooking room" was closed. Defendant and his wife were outside the home but on the premises.

12. [Informant] told Sgt. Johnson further: that he had known [D]efendant and his wife for several years; . . . that there was a vent in the outside wall of the "cooling [sic] room"; that if the vent was uncovered that methamphetamine was being cooked; that he had been ad [sic] Defendant's house three weeks to a month prior and that they had been cooking methamphetamine at that time; that Defendant had downloaded recipes for cooking methamphetamine into his computer; that Defendant and his wife would cook anywhere from a gram to an ounce of methamphetamine at a time; and that in the cooking room was a burner, hot plate, exhaust fan, chemicals, mason jars, glassware, matches, pills, acetone, muriatic and sulfuric acids, and butane.

. . .

18. . . . Lt. Shores [of the Cleveland County Sheriff's Office] prepared an application for a search warrant that was presented to the undersigned at approximately 6:15 p.m. on March 2nd, 2006. Said application did not contain information regarding the nature of [Informant's] prior criminal activity but related how he had provided information in the past that had led to the arrest of three individuals and that Sgt. Johnson was of the opinion that if [Informant] told him something, it would be the truth.

19. The information provided by [Informant] in the context by which it was provided had been reliable in the past. Such information had led to the arrest of three individuals. That this information was sufficient to satisfy the undersigned that the information provided to law enforcement was reliable for the issuance of the search warrant. [Informant's] fraudulent activity in his personal life is inconsequential to the undersigned in regards to whether to issue a warrant and that confidential informants often do have criminal histories and pending criminal charges at the time they provide information.

20. When Sgt. Johnson told [Informant] that the only way he could help himself was to provide substantial assistance, he did not tell or suggest to [Informant] what type of assistance to provide. Sgt. Johnson did not provide [Informant] with names upon whom to offer information. Sgt. Johnson did not tell [Informant] what type of information to provide. Sgt. Johnson did not tell [Informant] how to obtain the information.

21. [Informant] was well familiar with . . . [D]efendant and his wife. He had been to their house a number of times. He had known them a number of years. He knew where in the house [D]efendant and his wife cooked methamphetamine. He knew where [D]efendant kept his gun. [Informant] had been in [D]efendant's house three weeks to one month prior to February 28th, 2006, while [D]efendant cooked methamphetamine.

22. On February 28th, 2006, [Informant] went to [D]efendant's house. Defendant and his wife were outside of the home working on a backhoe. [Informant] stepped through the outside door of the residence into the kitchen area, saw pills and matches on the counter and left. He did not enter any other

area of the house. No evidence was presented other than suggestion that [Informant] had been told to not be on or about [D]efendant's property or was told not to enter [D]efendant's home. [Informant's] familiarity with [D]efendant and his wife and the regularity of his visits leads to the conclusion [Informant's] entry into [D]efendant's home was not illegal.

23. Lt. Shores has had extensive training and experience with narcotics investigations and clandestine laboratories. Based upon his training and experience, the location of the pills, matches and the preparation of the matches led Lt. Shores to the opinion a methamphetamine lab was in operation or about to be operated.

24. Coupling the items seen by [Informant] on February 28th, 2006, with the equipment and materials observed three weeks to one month previous add credence to Lt. Shores' opinion concerning the operation of the methamphetamine lab.

25. The equipment and materials observed by [Informant] prior to February 28th, 2006, were of the type that a methamphetamine lab operation was an ongoing operation, long term in nature. This information was sufficient to establish probable cause for the issuance of the search warrant.

26. The totality of the circumstances described in the application for the search warrant created a substantial basis for more than a fair probability that methamphetamine lab equipment and contraband would be found at [D]efendant's house.

Based on the foregoing findings, the [c]ourt CONCLUDES:

1. [Informant] was not acting as an agent of the State when he entered [D]efendant's property.

2. [Informant's] criminal record and charges were of little or no consequence when taken in the context of providing prior reliable information that led to arrest[s].

3. The information contained in the application for search warrant was sufficient to provide probable cause for the issuance of the search warrant.

4. There was no violation of [D]efendant's statutory or Constitutional rights in the issuance of the search warrant on March 2nd, 2006.

Defendant challenges the trial court's finding of fact number 25: "The equipment and materials observed by [Informant] prior to February 28th, 2006, were of the type that a methamphetamine lab operation was an ongoing operation, long term in nature." Defendant first contends that this finding is actually a conclusion of law, not a finding of fact, and we should, therefore, review this "finding" *de novo*.

> The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law. Any determination reached through "logical reasoning from the evidentiary facts" is more properly classified a finding of fact.

*Matter of Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations omitted).

Defendant asserts specifically that the clause, "a methamphetamine lab operation was an ongoing operation, long term in nature[,]" was a conclusion of law. However, Defendant does not provide any support for the notion that a determination that an operation was an ongoing operation and long term in nature reflected the exercise of judgment or the application of legal principles. Reviewing finding of fact number 25 in its entirety, we find that the phrase: "The equipment and materials observed by [Informant] prior to February 28th, 2006, were of the type that a methamphetamine lab operation was an ongoing operation, long term in nature[,]" more accurately reflects the application of "logical reasoning from the evidentiary facts[.]" Therefore, we hold that the portion of finding of fact number 25 to which Defendant directs his argument is properly labeled a finding of fact and we review it to determine whether it was supported by competent evidence.[1] *Cooke*, 306 N.C. at 134, 291 S.E.2d at 619.

In his application for a search warrant, Lieutenant Joel Shores of the Cleveland County Sheriff's Office included the following statements under the heading, "Probable Cause":

---

1. We note that finding of fact number 25 also contains the following sentence: "This information was sufficient to establish probable cause for the issuance of the search warrant." This portion is a conclusion of law and not a finding of fact, but Defendant's argument is directed towards that portion of finding of fact number 25 which we have determined to be a finding of fact. *See State v. Wilson*, 155 N.C. App. 89, 93-94, 574 S.E.2d 93, 97 (2002) ("[A] trial court's conclusions of law regarding whether the officer had reasonable suspicion [or probable cause] to detain a defendant is reviewable *de novo*."). (Citations omitted, internal alteration in the original).

Based on my training and experience, I am familiar with the chemicals and Precursors associated with the manufacturing of methamphetamine and the traits and practices of those involved in the manufacturing of methamphetamine.

. . .

[I]nformant] stated . . . [t]hat within the last three weeks, he/she had seen [Defendant and his wife] cooking methamphetamine in the house.

. . .

[I]nformant stated that he/she had been to [Defendant's house] with[in] the last 72 hours of making this application and had saw [sic] pills and matches on the counter of the kitchen. . . . [I]nformant stated that some of the matches were in boxes, some w[]ere in packs and some w[]ere cut up and in a zip lock bag.

. . .

Based on this officer[']s training and experience, and the detailed information supplied by . . . [I]nformant who has given credible information in the past, This applicant believes that [Defendant and his wife] are in the business of manufacturing Methamphetamine[.]

We hold that this sworn information is competent evidence to support a finding that "[t]he equipment and materials observed by [Informant] prior to February 28th, 2006, were of the type that a methamphetamine lab operation was an ongoing operation, long term in nature."

*The Trial Court's Conclusions of Law*

[2] Defendant focuses his argument on the trial court's determination that there existed probable cause to support the issuance of a warrant. Defendant argues that the information provided by Lieutenant Shores in the warrant application was stale and, therefore, insufficient to support the issuance of a warrant.

*Staleness*

Our Court addressed the issue of "staleness" in *State v. Witherspoon* as follows:

[t]he test for "staleness" of information on which a search warrant is based is whether the facts indicate that probable cause exists at the time the warrant is issued. Common sense must be

used in determining the degree of evaporation of probable cause. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock.

. . .

Our Supreme Court has stated that a number of variables are to be considered in determining whether probable cause still exists at the time a search warrant is issued, including *inter alia* the items to be seized and the character of the crime.

. . .

One may properly infer that equipment acquired to accomplish the crime and records of the criminal activity will be kept for some period of time. When the evidence sought is of an ongoing criminal business of a necessarily long-term nature, such as marijuana growing, rather than that of a completed act, greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time.

*State v. Witherspoon*, 110 N.C. App. 413, 419-20, 429 S.E.2d 783, 786-87 (1993) (internal citations omitted).

Defendant's argument focuses on the statements made by Informant to officers that Informant had been to Defendant's house three weeks earlier. Defendant contends that the materials observed by Informant three weeks prior to the issuance of the warrant were stale at the time the warrant application was submitted to the magistrate. By limiting his focus to one finding of fact, Defendant ignores the evidence concerning Informant's observations made just one day prior to the submission of the warrant application. When the trial court's order is considered in its entirety, Defendant's argument fails.

The trial court's findings of fact reprinted above were either unchallenged by Defendant, or have been reviewed by this Court, and deemed supported by competent evidence. They are therefore binding on appeal. *Roberson*, 163 N.C. App. at 132, 592 S.E.2d at 735-36. We find the following findings of fact particularly pertinent:

11. On or about March 1, 2006, [Informant] told Johnson he had been at the home of . . . [D]efendant on February 28th, 2006, had gone into [D]efendant's kitchen and had seen pills and matches on the counter. Some of the matches had been cut up and placed in a Ziploc bag. The door to the "cooking

room" was closed. Defendant and his wife were outside the home but on the premises.

12. [Informant] told Sgt. Johnson further: that he had known [D]efendant and his wife for several years; . . . that there was a vent in the outside wall of the "cooling [sic] room"; that if the vent was uncovered that methamphetamine was being cooked; that he had been ad [sic] Defendant's house three weeks to a month prior and that they had been cooking methamphetamine at that time; that Defendant had downloaded recipes for cooking methamphetamine into his computer; that Defendant and his wife would cook anywhere from a gram to an ounce of methamphetamine at a time; and that in the cooking room was a burner, hot plate, exhaust fan, chemicals, mason jars, glassware, matches, pills, acetone, muriatic and sulfuric acids, and butane.

. . .

21. [Informant] was well familiar with [D]efendant and his wife. He had been to their house a number of times. He had known them a number of years. He knew where in the house [D]efendant and his wife cooked methamphetamine. He knew where [D]efendant kept his gun. [Informant] had been in [D]efendant's house three weeks to one month prior to February 28th, 2006, while [D]efendant cooked methamphetamine.

22. On February 28th, 2006, [Informant] went to [D]efendant's house. Defendant and his wife were outside of the home working on a backhoe. [Informant] stepped through the outside door of the residence into the kitchen area, saw pills and matches on the counter and left. He did not enter any other area of the house. No evidence was presented other than suggestion that [Informant] had been told to not be on or about [D]efendant's property or was told not to enter [D]efendant's home. [Informant's] familiarity with [D]efendant and his wife and the regularity of his visits leads to the conclusion [Informant's] entry into [D]efendant's home was not illegal.

23. Lt. Shores has had extensive training and experience with narcotics investigations and clandestine laboratories. Based upon his training and experience, the location of the pills, matches and the preparation of the matches led Lt. Shores to

the opinion a methamphetamine lab was in operation or about to be operated.

24. Coupling the items seen by [Informant] on February 28th, 2006, with the equipment and materials observed three weeks to one month previous add credence to Lt. Shores' opinion concerning the operation of the methamphetamine lab.

25. The equipment and materials observed by [Informant] prior to February 28th, 2006, were of the type that a methamphetamine lab operation was an ongoing operation, long term in nature. This information was sufficient to establish probable cause for the issuance of the search warrant.

It is clear that the trial court determined that the magistrate considered not only the three-week old evidence, but also observations made just one day before the warrant application was submitted, as well as Lieutenant Shores' opinion that, based on his experience, an ongoing methamphetamine production operation was present. Based on both common sense and the nature of "the items to be seized and the character of the crime[,]" we find this evidence not to be stale. *Witherspoon*, 110 N.C. App. at 419, 429 S.E.2d at 786 (internal citations omitted).

*Probable Cause*

[3] We now review the trial court's findings of fact to determine whether they support the trial court's conclusions of law. In reviewing an application for a warrant, a reviewing court is to pay "great deference" to the magistrate's determination of probable cause. *State v. Ledbetter*, 120 N.C. App. 117, 121-22, 461 S.E.2d 341, 344 (1995) (citations omitted). A reviewing court "should not conduct a *de novo* review of the evidence to determine whether probable cause existed at the time the warrant was issued." *Id.* at 122, 461 S.E.2d at 344 (citations omitted). To determine whether probable cause existed, a reviewing court is to examine "the totality of the circumstances." *State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 261 (1984).

We have explained the requirements for a finding of probable cause as follows:

Probable cause does not mean actual and positive cause, nor does it import absolute certainty. The determination of the existence of probable cause is not concerned with the question of whether the accused is guilty or innocent, but only with whether

the affiant has reasonable grounds for his belief. If the apparent facts set out in an affidavit for a search warrant are such that a reasonably discreet and prudent person would be led to believe there was a commission of the offense charged, there is probable cause justifying the issuance of a search warrant.

*State v. Byrd*, 60 N.C. App. 740, 743, 300 S.E.2d 16, 18 (1983) (citation omitted).

Reviewing the findings of fact as detailed above, in the totality of the circumstances and giving great deference to the magistrate's determination, we find sufficient evidence to support a conclusion of probable cause. In particular, we find that Informant's observations of methamphetamine production and materials, both three weeks-old and one day-old, combined with Lieutenant Shores' opinion that there was, in fact, such an operation, "are such that a reasonably discreet and prudent person would be led to believe there was a commission of the offense charged." *Id.* We therefore hold that the trial court did not err in denying Defendant's motion to suppress the evidence obtained by the execution of the search warrant.

*Intent to Distribute a Controlled Substance*

[4] Defendant next argues that the trial court erred by denying his motion to dismiss the charge of manufacturing methamphetamine because there was insufficient evidence that Defendant intended to distribute the substance. We disagree.

When ruling on a motion to dismiss, a trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). The trial court "is to consider the evidence in the light most favorable to the State . . . [and] the State is entitled to every reasonable intendment and every reasonable inference to be drawn from the evidence; contradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652-53 (1982) (internal citations omitted).

The indictment stated that Defendant "manufacture[d] methamphetamine, a controlled substance included in [S]chedule II of the N.C. Controlled Substances Act. The manufacturing consisted of chemically combining and synthesizing precursor chemicals to create methamphetamine." Defendant argues that "[w]hen, as in the case

*sub judice*, the manufacturing activity is compounding, intent to distribute is then a necessary element of the offense of manufacturing." Defendant's statement of the law is correct, but his assertion that it applies to the case before us is not.

N.C. Gen. Stat. § 90-87(15) defines "manufacture" as:

the production, preparation, propagation, compounding, conversion, or processing of a controlled substance by any means, whether directly or indirectly, artificially or naturally, or by extraction from substances of a natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; and "manufacture" further includes any packaging or repackaging of the substance or labeling or relabeling of its container except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use[.]

N.C. Gen. Stat. § 90-87(15) (2010). Our Supreme Court has noted that proof of intent to distribute is required by portions of this statute but has held that "the offense of manufacturing a controlled substance does not require an intent to distribute unless the activity constituting manufacture is preparation or compounding." *State v. Brown*, 310 N.C. 563, 568, 313 S.E.2d 585, 588 (1984). The purpose of the requirement of intent to distribute for preparation or compounding is to

avoid making an individual liable for the felony of manufacturing [a] controlled substance in the situation where, being already in possession of a controlled substance, he makes it ready for use (*i.e.*, rolling marijuana into cigarettes for smoking) or combines it with other ingredients for use (*i.e.*, making the so-called "Alice B. Toklas" brownies containing marijuana).

*Id.* at 567, 313 S.E.2d at 588, quoting *State v. Childers*, 41 N.C. App. 729, 732, 255 S.E.2d 654, 656 (1979) (alterations in the original).

Defendant was charged with manufacturing methamphetamine by "chemically combining and synthesizing precursor chemicals[.]" We note that this language does not track the precise language of N.C.G.S. § 90-87(15), but we find that it is most similar to the following clause: "by means of chemical synthesis, or by a combination of extraction and chemical synthesis." N.C.G.S. § 90-87(15). Defendant asserts that "in the case *sub judice*, the manufacturing activity is compounding[.]" We disagree. The indictment is clear that Defendant was charged with chemically synthesizing precursor chemicals to

create methamphetamine and not with either "the preparation or compounding of a controlled substance[.]" N.C.G.S. § 90-87(15).

The activity for which Defendant was charged was the creation of methamphetamine from the precursor chemicals pseudoephedrine and red phosphorous. This situation is clearly distinguishable from that discussed in *Brown*, where a defendant "*already in possession of a controlled substance* . . . makes it ready for use (*i.e.*, rolling marijuana into cigarettes for smoking) or combines it with other ingredients for use (*i.e.*, making the so-called 'Alice B. Toklas' brownies containing marijuana)." *Brown*, 310 N.C. at 567, 313 S.E.2d at 588, quoting *Childers*, 41 N.C. App. at 732, 255 S.E.2d at 656 (emphasis added). Because Defendant was not charged with either "preparation or compounding of a controlled substance[,]" the State was not required to prove the additional element of intent to distribute. *Id.*

Defendant's only argument concerning his motion to dismiss the charge of manufacturing a controlled substance relies on the State's failure to prove Defendant's intent to distribute. Because we have determined that intent to distribute was not a necessary element of the offense charged, we overrule this assignment of error.

### Jury Instructions

### Personal Use

[5] Defendant next argues that the trial court erred by failing to give an instruction "on excluding preparation for one's own use from manufacturing methamphetamine[.]" We disagree. "The trial court must give a requested instruction, at least in substance, if a defendant requests it and the instruction is correct in law and supported by the evidence." *State v. Reynolds*, 160 N.C. App. 579, 581, 586 S.E.2d 798, 800 (2003). In this case, because we have determined that the personal use exception is inapplicable to Defendant's charge, the trial court was not required to provide this instruction. We therefore overrule this assignment of error.

### Variance in the Indictment and Instruction

[6] Defendant next argues that the trial court committed plain error "in instructing the jury they could find [Defendant] guilty of manufacturing methamphetamine under theories of guilt that were in variance from the indictment[.]" We agree.

Defendant did not object to the jury instructions and is therefore limited to assigning plain error to them. *State v. Hardy*, 353 N.C. 122,

131, 540 S.E.2d 334, 342 (2000). Plain error is an error so fundamental and so prejudicial that justice cannot have been done. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Defendant relies on *State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986) and *State v. Turner*, 98 N.C. App. 442, 391 S.E.2d 524 (1990).

In *Tucker*, the indictment which led to the defendant's charges contained the following language:

"The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did kidnap [the victim], a person who had attained the age of 16 years, by unlawfully *removing her from one place to another*, without her consent, and for the purpose of facilitating the commission of the felonies of First Degree Rape and First Degree Sexual Offense. The victim . . . was sexually assaulted by the defendant."

*Tucker*, 317 N.C. at 537, 346 S.E.2d at 420 (alteration and emphasis in the original). The jury was instructed that "they could find defendant guilty of first degree kidnapping if they found, *inter alia*, 'that the defendant unlawfully *restrained* [the victim], that is, restricted [her] freedom of movement by force and threat of force.' (Emphasis supplied.)" *Id.* Our Supreme Court held that:

Although the state's evidence supported [the trial court's] instruction, the indictment does not. "It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." The kidnapping indictment charges that defendant committed kidnapping only by unlawfully *removing* the victim "from one place to another." [The trial court] repeatedly instructed the jury that defendant could be convicted if he simply unlawfully *restrained* the victim, "that is, restricted [her] freedom of movement by force and threat of force."

*Id.* at 537-38, 346 S.E.2d at 420-21 (citation omitted, emphasis in the original). The Supreme Court then determined that the trial court's instruction was error. *Id.* at 540, 346 S.E.2d at 422.

The Court in *Tucker*, in determining whether the trial court's error was plain error, quoted *State v. Brown*, 312 N.C. 237, 321 S.E.2d 856 (1984):

In conclusion, the judge's instructions permitted the jury in this case to predicate guilt on theories of the crime which were not charged in the bill of indictment and which were, in one instance, not supported by the evidence at trial. We therefore hold that under the factual circumstances of this case, there was "plain error" in the jury instructions as that concept was defined in *Odom* and defendant must therefore receive a new trial on the first-degree kidnapping charge.

*Brown*, 312 N.C. at 249, 321 S.E.2d at 863. The *Tucker* Court then held that the trial court committed plain error:

It is true that in *Brown* one of the theories submitted was supported by neither the evidence nor the indictment. Nevertheless, it would be difficult to say that permitting a jury to convict a defendant on a theory not legally available to the state because it is not charged in the indictment or not supported by the evidence is not plain error even under the stringent test required to invoke that doctrine. In light of the highly conflicting evidence in the instant kidnapping case on the unlawful removal and restraint issues, we think the instructional error might have, as we said in *Walker*, " 'tilted the scales' and caused the jury to reach its verdict convicting the defendant." Defendant must, therefore, receive a new trial on the kidnapping charge for plain error in the jury instructions.

*Tucker*, 317 N.C. at 540, 346 S.E.2d at 422 (citations omitted).

In *Turner*, our Court addressed a similar issue. We held that, in spite of the fact that the evidence supported the jury instructions, the indictment did not:

In our case, defendant was indicted for "conspir[ing] with Ernie Lucas to commit the felony of trafficking to deliver to *Ernie Lucas* 28 grams or more . . . of cocaine." However, the trial court instructed the jury "that . . . the defendant agreed with Ernie Lucas to deliver 28 grams or more of cocaine to another, and that the defendant,—and that Ernie Lucas intended at the time the agreement was made, that the cocaine would be delivered. . . ." Just as in *Tucker*, we believe that the State's evidence does support the trial court's instruction; however, the indictment does not. Consequently, we must award defendant a new trial on the conspiracy charge.

*Turner*, 98 N.C. App. at 447-48, 391 S.E.2d at 527 (alterations and emphasis in the original).

In the present case, Defendant was indicted for "manufactur[ing] methamphetamine, a controlled substance included in [S]chedule II of the N.C. Controlled Substances Act. The manufacturing consisted of chemically combining and synthesizing precursor chemicals to create methamphetamine." The jury was instructed as follows:

> [Defendant] has been charged with manufacturing methamphetamine, a controlled substance. For you to find [Defendant] guilty of this—guilty of this offense, the State must prove beyond a reasonable doubt that [Defendant] manufactured methamphetamine. Producing, preparing, propagating, compounding, converting or processing methamphetamine, either by extraction from substances of natural origin or by chemical synthesis would be manufacturing methamphetamine.

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the [Defendant] produced, prepared, propagated, compounded, converted or processed methamphetamine, either by extraction from substances of natural origin or by chemical synthesis, it would be your duty to return a verdict of guilty.

Defendant contends that this instruction was plain error because it allowed the jury to convict him "on theories of guilt which were not charged in the indictment." We find this case analagous to *Tucker*, wherein the defendant was indicted for kidnapping under one theory and ultimately received an instruction on a different theory of kidnapping; and to *Brown*, where "the judge's instructions permitted the jury in [the *Brown*] case to predicate guilt on theories of the crime which were not charged in the bill of indictment[.]" *Brown*, 312 N.C. at 249, 321 S.E.2d at 861; *see also Tucker*, 317 N.C. at 540, 346 S.E.2d at 422.

The State counters that the instruction "tracked exactly the Pattern Jury Instruction[.]" The State presents no support for its argument that an instruction that follows the pattern jury instruction cannot be in error. Further, we note that the instruction given did not "track exactly" the Pattern Jury Instruction. The Pattern Jury Instruction states:

> The defendant has been charged with manufacture of (*name substance*), a controlled substance.

> For you to find the defendant guilty of this offense, the State must prove beyond a reasonable doubt that the defendant manufac-

tured *(name substance)*. *(Describe conduct)* of *(name substance)* would be manufacture of a controlled substance.

If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant *(describe conduct)* *(name substance)*, it would be your duty to return a verdict of guilty. If you do not so find or if you have a reasonable doubt it would be your duty to return a verdict of not guilty.

N.C.P.I., Crim. 260.19. In the present case, where the Pattern Jury Instruction instructs the trial court to "describe conduct[,]" the trial court listed "[p]roducing, preparing, propagating, compounding, converting or processing methamphetamine, either by extraction from substances of natural origin or by chemical synthesis[.]" The trial court did not simply describe the sole method articulated by the indictment, to wit, that "[t]he manufacturing consisted of chemically combining and synthesizing precursor chemicals to create methamphetamine." Instead, the trial court provided a list of every theory of manufacturing a controlled substance set forth in N.C.G.S. § 90-87. As our Court noted in *Turner*, "our Supreme Court has concluded that such a 'slight difference' is prejudicial and amounts to plain error." *Turner*, 98 N.C. App. at 448, 391 S.E.2d at 527, citing *Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983); *see also State v. Dammons*, 293 N.C. 263, 272, 237 S.E.2d 834, 841 (1977) (holding that a trial court erred by reading to the jury a statute "in its entirety without pointing out to the jury which parts of it were material to the case," thereby "permitt[ing] the jury to consider various theories of [the crime charged]").

We further note our discussion above concerning the significance of the particular method of manufacture provided by N.C.G.S. § 90-87. As discussed above, a conviction for manufacture by activity consisting of "preparation" or "compounding" requires proof of the additional element of intent to distribute, which a conviction for manufacture by activity consisting of production, propagation, conversion, or processing would not. Because of this significant difference between the elements required to sustain a conviction, a variation between indictment and instruction such as the one at issue cannot be said to amount to only a "slight difference."

Because of the variance between indictment and instruction, and in light of our case law, we find the trial court's instruction to be plain error. We therefore grant Defendant a new trial on charge No. 06 CRS 1602, manufacture of a controlled substance.

*Possession of Precursor Chemicals*

[7] Defendant next argues that the trial court erred by "instructing the jury they could find [Defendant] guilty of possessing precursor chemicals under the theory of actual possession when there was insufficient evidence to support that theory." We disagree.

"The trial court's jury instructions on possible theories of conviction must be supported by the evidence." *State v. Jordan*, 186 N.C. App. 576, 582, 651 S.E.2d 917, 921 (2007) (citation omitted). We review a jury instruction

> contextually and in its entirety. The charge will be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. . . ." The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction. "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury."

*State v. Blizzard*, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005); *see also State v. Allen*, ⸻ N.C. App. ⸻, ⸻, 684 S.E.2d 526, 534 (2009) ("Even assuming arguendo there was insufficient evidence in the record to support a flight instruction, [the] defendant must still demonstrate that the instructional error was prejudicial.").

Defendant contends that the trial court erred in that "[n]one of the witnesses placed [Defendant] in actual possession of any precursor chemicals. [Defendant] was outside of the house when the witnesses interacted with him."

After the State requested an instruction on actual possession, the trial court had the following discussion with Defendant's attorney:

> THE COURT: I'm going to give both sides because I think I need to define both to make clear—I guess, to override any of the jurors' conceptions of possession. Their conceptions they may have brought with them about what constitutes possession.

> [Defense Counsel]: Well, would you give them an instruction that I'm giving you these two definitions for the limited purpose of explaining the two different types of possession and there has been no evidence that [Defendant] possessed the precursor on March the 2nd, in that on March the 2nd, there was no evidence

that he had anything on his person and only instruct the jury to follow the law insofar as constructive possession is concerned?

THE COURT: I'm not going to go that far. I'm going to say possession may be either actual or constructive.

[Defense Counsel]: Okay.

THE COURT: And that the jury will have to recall the evidence and draw their own conclusions on that.

[Defense Counsel]: We would respectfully OBJECT to the giving of the actual possession instruction unless it's accompanied by the statement that on the date in question, there has been no evidence submitted that he had actual possession. . . .

THE COURT: All right, I would OVERRULE that objection.

The trial court then gave the following instruction to the jury:

[D]efendant has been charged with unlawfully possessing an immediate precursor chemical. For you to find . . . [D]efendant guilty of this offense, the State must prove two things beyond a reasonable doubt.

First, that . . . [D]efendant knowingly possessed pseudoephedrine and red phosphorous. Pseudoephedrine and red phosporous are immediate precursor chemicals.

Possession of a substance may be either actual or constructive. A person has actual possession of a substance if he has it on his person, is aware of its presence and, either by himself or together with others, has both the power and intent to control its disposition or use.

A person has constructive possession of a substance if he does not have it on his person but is aware of its presence and has, either by himself or together with others, both the power and intent to control its disposition or use.

A person's awareness of the presence of the substance and his power and intent to control its disposition or use may be shown by direct evidence or may be inferred from the circumstances. If you find beyond a reasonable doubt that a substance was found in a certain premises and that the defendant exercised control over those premises, whether or not he owned them, this would be a circumstance from which you may infer that . . . [D]efendant

was aware of the presence of the substance and had both the power and intent to control its disposition or use.

. . .

So if you find from the evidence beyond a reasonable doubt that on or about the alleged date, . . . [D]efendant knowingly possessed pseudoephedrine and red phosphorous and intended to manufacture a controlled substance or knew or had reasonable cause to believe it would be used to manufacture a controlled substance, it would be your duty to return a verdict of guilty.

While Defendant asserts there was insufficient evidence to support the trial court's instruction on actual possession, he fails to argue that "such error was likely, in light of the entire charge, to mislead the jury." *Blizzard,* 169 N.C. App. at 297, 610 S.E.2d at 253. Defendant has failed to show how the instruction would have misled the jury, nor has he argued how any potential error may have prejudiced Defendant. Reviewing the instruction contextually and in its entirety, it is clear that the explanations of both actual and constructive possession were given as a means of clarifying the instructions to the jury. We therefore find the instruction sufficient and overrule this assignment of error. However, because the conviction under 06 CRS 1603 for possession of precursor chemicals was consolidated for judgment with the conviction under 06 CRS 1602, we must remand for resentencing as to 06 CRS 1603. *State v. Wortham,* 318 N.C. 669, 674, 351 S.E.2d 294, 297 (1987) ("[W]e think the better procedure is to remand for resentencing when one or more but not all of the convictions consolidated for judgment has been vacated.").

New trial in No. 06 CRS 1602; remanded for resentencing in No. 06 CRS 1603.

Judge STEPHENS concurs.

Judge STEELMAN concurs in part and dissents in part with a separate opinion.

STEELMAN, Judge, concurring in part and dissenting in part.

I fully concur with the majority opinion, with the exception of its analysis finding plain error and a fatal variance between the indictment and the trial judge's charge to the jury. As to this portion of the opinion, I must respectfully dissent.

The relevant portion of the indictment reads:

Manufacture methamphetamine, a controlled substance included in Schedule II of the N.C. Controlled Substances Act. The manufacturing consisted of chemically combining and synthesizing precursor chemicals to create methamphetamine.

The relevant portion of the trial court's instructions reads:

Producing, preparing, propagating, compounding, converting or processing methamphetamine, either by extraction from substances of natural origin or by chemical synthesis, would be manufacturing methamphetamine.

"A charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct." *State v. McWilliams*, 277 N.C. 680, 684-85, 178 S.E.2d 476, 479 (1971) (citing *State v. Cook*, 263 N.C. 730, 140 S.E.2d 305 (1965); *State v. Goldberg*, 261 N.C. 181, 134 S.E.2d 334 (1964), *overruled on other grounds, News & Observer v. State*, 312 N.C. 276, 322 S.E.2d 133 (1984); *State v. Taft*, 256 N.C. 441, 124 S.E.2d 169 (1962)).

While the trial court's instructions utilized slightly different words than the indictment, the import of both the indictment and the charge are the same. The manufacture of methamphetamine is accomplished by the chemical combination of precursor elements to create methamphetamine. The charge to the jury, construed contextually as a whole, was correct and without prejudice. I would find no error, much less plain error, in the charge given by the learned trial judge.

I further note that our Supreme Court, in the case of *State v. Odom*, stated that "when the 'plain error' rule is applied, it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." 307 N.C. 655, 660-61, 300 S.E.2d 375, 378 (1983) (citation, quotation and internal alterations omitted). In determining whether a defect in a jury instruction amounts to plain error, we "must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 378-79 (citing *United States v. Jackson*, 569 F.2d 1003 (7th Cir.), *cert. denied*, 437 U.S. 907, 57 L. Ed. 2d 1137 (1978)); *see also State v. Gibbs*, 335 N.C. 1, 436 S.E.2d 321 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). In the instant case, I would hold that a review of the whole record reveals no plain error mandating a new trial.