ZACHARY, Judge.
Defendant appeals from the trial court's order denying his Motion to Suppress evidence of his impaired driving offense. We affirm.
Background
Around 1:00 a.m. on 30 January 2016, Lieutenant Ronnie Byrd noticed a vehicle traveling in the far right-hand lane of four-lane Fayetteville Road near Garner. The vehicle crossed over the center line without signaling a lane change and then crossed over the right fog line. Lieutenant Byrd followed the vehicle, which continued to cross the center line and the right fog line repeatedly. Suspecting the driver of impaired driving, Lieutenant Byrd initiated a stop of the vehicle. The driver, Defendant Gabriel Thabet, immediately pulled over.
When Lieutenant Byrd approached the vehicle he noticed "a strong odor of alcohol" coming from Defendant, although Defendant denied having had anything to drink. Lieutenant Byrd also observed that Defendant's eyes were red and glassy. Lieutenant Byrd detained Defendant for suspicion of impaired driving while he called another deputy to the scene, as Lieutenant Byrd's shift was almost over. Deputy T. Bass arrived at the scene roughly ten minutes later and likewise noticed "a moderate to strong odor of alcohol" about Defendant. Deputy Ormiston also arrived on the scene.
Deputy Ormiston had Defendant exit the vehicle and requested that he conduct several field sobriety tests, which Defendant refused. Defendant instead insisted, "I want a breathalyzer." Defendant continued to state repeatedly that he would not perform a field sobriety test until he received "a breathalyzer."
Deputy Bass proceeded to retrieve a Portable Breath Test from his vehicle, believing that this was the test to which Defendant was referring. Deputy Bass presented the Portable Breath Test to Defendant and Defendant provided two breath samples without objection. Defendant did not again request "a breathalyzer" after Deputy Bass administered the Portable Breath Test. Defendant tested positive for alcohol, and was placed under arrest. At the Detention Center, Defendant refused to submit to an Intoximeter. Upon issuance of a search warrant, a blood sample was taken from Defendant. Defendant was subsequently indicted for driving while impaired, habitual impaired driving, and driving while license revoked.
Defendant filed a Motion to Suppress, in which he contended that his request for "a breathalyzer" was not a request for the roadside Portable Breath Test, but was instead a request to have a pre-arrest chemical analysis conducted on an "Intoximeter" device at the Wake County Detention Center, a right afforded pursuant to N.C. Gen. Stat. § 20-16.2(i). Defendant argued that the officers' refusal to comply with that request required suppression of the evidence that was obtained against him on the impaired driving offense. In support of his contention, Defendant tendered Julian Doug Scott as an expert witness "in policies and procedures regarding the administration of chemical analysis." Mr. Scott testified that, in his opinion, a request for "a breathalyzer" would mean a request for a pre-arrest chemical analysis test. Mr. Scott further opined "that an officer should clarify whether suspects are asking for pre-arrest testing or portable breath tests."
After a hearing on Defendant's Motion to Suppress, the trial court found, inter alia , that "Defendant did not assert his right to a pre-arrest chemical analysis." The trial court therefore concluded that "[n]o violation of N.C. Gen. Stat. § 20-16.2(i) occurred," and denied Defendant's Motion to Suppress. Defendant appeals.
Standard of Review
This Court's review of a trial court's denial of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). Deference must be afforded to a trial court's findings of fact because the trial judge " 'sees the witnesses, observes their demeanor as they testify and by reason of his more favorable position, he is given the responsibility of discovering the truth. The appellate court[,]' " on the other hand, " 'sees only a cold, written record.' " Id. at 134-35, 291 S.E.2d at 620 (quoting State v. Smith , 278 N.C. 36, 41, 178 S.E.2d 597, 601 (1971) ). Accordingly, a trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." State v. Eason , 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994) (citations omitted).
" 'As a general rule, ... any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law. Any determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact.' " State v. Hinson , 203 N.C. App. 172, 179, 691 S.E.2d 63, 69, rev'd on other grounds , 364 N.C. 414, 700 S.E.2d 221 (2010) (quoting In re Helms , 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) ) (internal citations and quotation marks omitted).
Discussion
N.C. Gen. Stat. § 20-16.2(i) provides that
[a] person stopped or questioned by a law enforcement officer who is investigating whether the person may have committed an implied consent offense may request the administration of a chemical analysis before any arrest or other charge is made for the offense. Upon this request, the officer shall afford the person the opportunity to have a chemical analysis of his or her breath, if available, in accordance with the procedures required by G.S. 20-139.1(b). The request constitutes the person's consent to be transported by the law enforcement officer to the place where the chemical analysis is to be administered.
N.C. Gen. Stat. § 20-16.2(i) (2017). "Chemical Analysis" is defined as "[a] test or tests of the breath, blood, or other bodily fluid or substance of a person to determine the person's alcohol concentration or presence of an impairing substance, performed in accordance with G.S. 20-139.1 [.]" N.C. Gen. Stat. § 20-4.01(3a) (2017). Chemical analysis testing instruments must meet the compliance standards set forth in N.C. Gen. Stat. § 20-139.1(b), and the results of such a test are admissible in court. N.C. Gen. Stat. § 20-139.1(b) (2017). There is no requirement that an officer inform a person of his right to request a pre-arrest chemical analysis pursuant to N.C. Gen. Stat. § 20-16.2(i).
If an individual suspected of impaired driving does not request a pre-arrest chemical analysis under N.C. Gen. Stat. § 20-16.2(i), then the "law-enforcement officer may require the driver of [the] vehicle to submit to an alcohol screening test" at the scene of the stop. N.C. Gen. Stat. § 20-16.3(a) (2017). One such test is the Portable Breath Test. In contrast to a pre-arrest chemical analysis test, only "[t]he fact that a driver showed a positive or negative result on an alcohol screening test ... is admissible in a court[.]" N.C. Gen. Stat. § 20-16.3(d) (2017).
Our statutes do not delineate how an individual should "request the administration of a chemical analysis[.]" N.C. Gen. Stat. § 20-16.2(i). Nor would the determination of whether an individual has done so require the trial court's exercise of judgment. Cf. Helms , 127 N.C. App. at 510, 491 S.E.2d at 675 (whether DSS "made reasonable efforts to prevent removal" and whether it was in the child's "best interest to remain in the custody of DSS" "require the exercise of judgment"). Instead, the legislature has provided for a practical, common sense determination of whether an individual has made such a "request," which can be "reached through logical reasoning from the evidentiary facts" at issue. Hinson , 203 N.C. App. at 179, 691 S.E.2d at 69 (citation and quotation marks omitted). Thus, whether an individual "request[ed] the administration of a chemical analysis" so as to have invoked his rights under N.C. Gen. Stat. § 20-16.2(i) is most properly characterized as a question of fact. See, e.g. , Eason , 336 N.C. at 745, 445 S.E.2d at 926 ("After listening to the testimony, the trial court made multiple findings of fact, including a finding that defendant never requested an attorney.").
In the instant case, the trial court's finding that Defendant did not invoke his right pursuant to N.C. Gen. Stat. § 20-16.2(i) is supported by competent evidence. Notwithstanding the evidence to which Defendant points, the evidence otherwise tended to show that after Defendant repeatedly refused to conduct the various field sobriety tests, insisting that he receive "a breathalyzer," Deputy Bass went to his vehicle and retrieved the Portable Breath Test. When Deputy Bass presented the Portable Breath Test to Defendant, Defendant did not refuse the Portable Breath Test or insist once again that he wanted "a breathalyzer." Instead, Defendant willingly blew twice into the Portable Breath Test without objection and did not thereafter make another request for "a breathalyzer." In fact, Defendant refused to submit to the Intoximeter at the Wake County Detention Center.
It can be inferred from the evidence before the trial court that Defendant's request was not for a chemical analysis to be conducted at the Wake County Detention Center, to which he refused to submit, but was instead for a Portable Breath Test similar to the one that he willingly received. We thus conclude that competent evidence supported the trial court's finding that "Defendant did not assert his right to a pre-arrest chemical analysis under N.C. Gen. Stat. § 20-16.2(i)." Accordingly, as the right to a pre-arrest chemical analysis is a purely statutory right that is invoked only by a defendant's "request" for that test, we affirm the trial court's denial of Defendant's Motion to Suppress on the grounds that "[n]o violation of N.C. Gen. Stat. 20-16.2(i) occurred[.]"
Conclusion
For the reasoning contained herein, the trial court's order is
AFFIRMED.
Report per Rule 30(e).
Judge STROUD concurs.
Judge MURPHY dissents.