STATE OF NORTH CAROLINA v. CHARLES NATHAN WITHERSPOON, JR.

No. 9226SC279

(Filed 1 June 1993)

1. Searches and Seizures § 21 (NCI3d)— marijuana grown in crawl space of house—informant—probable cause for search warrant

Information from a concerned citizen that defendant was growing marijuana in the crawl space of his house was sufficiently reliable to provide probable cause for a search warrant where the magistrate was presented a sworn affidavit signed by two officers which stated that a third officer had been told by a concerned citizen who wished to remain confidential ·that 100 marijuana plants were growing under a lighting system with automatic timers in the crawl space of defendant's home; the information was based on the informant's personal observa-

tions and on the informant's numerous conversations with defendant concerning the cultivation of the marijuana plants; the informant told the third officer that he had used marijuana and had seen the cultivation of marijuana plants in the past; and the informant correctly told the third officer that defendant had been arrested on a prior occasion.

**Am Jur 2d, Searches and Seizures §§ 120-123.**

2. **Searches and Seizures § 21 (NCI3d)— search warrant— marijuana plants growing under house—plants seen within 30 days—information not stale**

Information from a concerned citizen that 100 marijuana plants had been seen growing in the crawl space of defendant's house "within the last 30 days" was not stale at the time the search warrant was issued because it is unlikely that defendant would personally consume such a large quantity within 30 days; if the marijuana was being grown for purposes of sale, then the informant's statements indicate that defendant was engaged in an ongoing activity; the magistrate could reasonably infer that the evidence would likely remain in defendant's home thirty days after being seen from the presence of a lighting system and timers, objects requiring installation and not subject to ready mobility; and the information concerned the cultivation of marijuana plants, the growth of which lasts approximately 3 to 4 months.

**Am Jur 2d, Searches and Seizures §§ 120-124.**

3. **Evidence and Witnesses § 1560 (NCI4th)— search warrant— exclusionary rule—good faith exception**

Assuming that information which served as the basis for a search warrant was insufficient, officers reasonably relied on a search warrant that was issued by a detached and neutral magistrate and took every reasonable step to comport with the fourth amendment requirements. The good faith exception to the exclusionary rule is applicable.

**Am Jur 2d, Evidence § 416.7.**

Appeal by defendant from order entered 31 October 1991 by Judge Peter W. Hairston in Mecklenburg County Superior Court. Heard in the Court of Appeals 31 March 1993.

Defendant pled guilty to manufacture of a controlled substance (91-CRS-38448), possession with intent to sell and deliver a controlled substance (91-CRS-38450), and possession of drug paraphernalia (91-CRS-38451). Defendant was sentenced to three years, suspended, with supervised probation for three years. Prior to the entry of his guilty plea, defendant made a motion pursuant to G.S. 15A-974 to suppress the evidence seized from his home on the ground that the search warrant was not supported by probable cause. Defendant contended *inter alia* that the informant's tips which formed the basis of the application for the search warrant were either stale or unreliable. The trial court denied defendant's motion. Having pled guilty, defendant now appeals.

On 30 May 1991, Officers James M. Kolbay and G. W. Hester of the Charlotte Police Vice Narcotics Bureau applied for a warrant to search defendant's home for marijuana, a controlled substance. As part of the application affidavit, Officers Kolbay and Hester swore to the following facts:

> We . . . have received information from Officer D. M. Sikes who has received information from a concerned citizen that Charles Nathan Witherspoon, Jr. is growing marijuana at 3602 Carlyle Drive. This citizen has been inside this address within the last 30 days and have [sic] observed approximately one hundred marijuana plants growing under the crawl-space of this house at 3602 Carlyle Drive using a light system with automatic timers. This concerned citizen advised they [sic] have known Charles Nathan Witherspoon, Jr. for more than 30 days and during this time period has spoken with Charles Nathan Witherspoon, Jr. on numerous occasions about his growing these marijuana plants. This concerned citizen has used marijuana and has observed it growing in the past. This concerned citizen lives and works in the Charlotte area and has nothing to gain by giving this information. Officer D. M. Sikes has known this concerned citizen for more than one year and knows them [sic] to be truthful. This concerned citizen wishes to remain confidential and is in fear of reprisals and bodily harm.

> The concerned citizen also stated that Charles Nathan Witherspoon, Jr., has been arrested for DWI, drives a light blue Ford LTD and parks it at his residence at 3602 Carlyle Drive. Through independent investigation, a criminal history shows a prior arrest for DWI. The affiants have observed

a light blue Ford LTD, North Carolina registration CSA-8167 parked in the driveway of 3602 Carlyle Drive. The vehicle is registered to BMW Realty. Prior arrest shows this is Charles Nathan Witherspoon, Jr.'s place of employment. Duke Power records show that Charles Nathan Witherspoon, Jr. has been paying the power bill for 3602 Carlyle Drive continuously for the last 6 months.

Based on these affiants['] training and experience as Charlotte Police Officers and Vice Investigators, the information given by the concerned citizen shows a continuous growing and cultivation process of marijuana plants. This is consistent with these affiants['] experience involving growing and cultivation of marijuana plants . . . .

Neither of the officers who submitted the sworn affidavit had met the concerned citizen. Officer Sikes, to whom the concerned citizen gave the information, did not appear before the magistrate nor did he submit a sworn affidavit. The magistrate issued the search warrant on 30 May 1991.

Officer Kolbay testified at the 31 October 1991 suppression hearing that as a result of the search of defendant's home pursuant to the 30 May 1991 warrant, 14 "full and bushy" marijuana plants that "took up all the [crawl] space underneath the [defendant's] house" were discovered, along with an "extensive lighting system, on a track lighting going back and forth" and an "automatic watering system." Additionally, 20 "smaller" marijuana plants were found "underneath a florescent light in the closet in the [defendant's] house." Officer Kolbay also testified that based on his eight years of experience as a police officer (including three years in the Vice Narcotics Bureau), his training, and his research, it takes "three to four months" for a marijuana plant to grow "from a small plant to maturity."

*Attorney General Lacy H. Thornburg, by Associate Attorney General Ronnie E. Rowell, for the State.*

*Goodman, Carr, Nixon & Laughrun, by Theo X. Nixon, for the defendant-appellant.*

EAGLES, Judge.

Defendant brings forward three assignments of error. In his first two assignments of error, defendant contends that there was

STATE v. WITHERSPOON

[110 N.C. App. 413 (1993)]

a lack of probable cause to support the magistrate's issuance of the search warrant because of the "insufficiency of reliable information provided by a 'concerned citizen' " and because of the "staleness of [the] information." In his last assignment of error, defendant argues that the trial court erred by failing to suppress the evidence "after applying a 'totality of circumstances' test to the information provided to the magistrate." After a careful review of the record, briefs, and transcript, we affirm.

[1] In determining under the federal and state constitutions whether probable cause exists for the issuance of a search warrant, our Supreme Court has provided that the "totality of the circumstances" test enunciated in *Illinois v. Gates*, 462 U.S. 213, 76 L.Ed. 2d 527 (1983) is to be applied. *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984).

> The totality of the circumstances test may be described as follows:
>
>> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.
>
> *Arrington*, 311 N.C. at 638, 319 S.E.2d at 257-58 (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39, 76 L.Ed. 2d 527, 548 [1983]). Under this test the question is whether the evidence as a whole provides a substantial basis for concluding that probable cause exists.

*State v. Beam*, 325 N.C. 217, 221, 381 S.E.2d 327, 329 (1989). *See State v. Riggs*, 328 N.C. 213, 218-19, 400 S.E.2d 429, 432-33 (1991).

Our inquiry commences with an examination of the reliability of the information presented in the 30 May 1991 affidavit.

> In showing that information is reliable for purposes of obtaining a search warrant, the State is not limited to certain narrowly defined categories or quantities of information. What is popularly termed a "track record" is only one method by which

a confidential source of information can be shown to be reliable for purposes of establishing probable cause.

*Riggs*, 328 N.C. at 219, 400 S.E.2d at 433.

Here, the magistrate was presented a sworn affidavit signed by Officer Kolbay and Officer Hester. Their affidavit stated that Officer Sikes had been told by a concerned citizen that 100 marijuana plants were growing under a lighting system with automatic timers in the crawl space of defendant's home. "The police officer making the affidavit may do so in reliance upon information reported to him by other officers in the performance of their duties." *State v. Vestal*, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971) (citation omitted). The officers' affidavit reflected that the informant's information was based on the informant's personal observations and on the informant's "numerous" conversations with defendant concerning the cultivation of these marijuana plants. "Concerning the reliability of the informant's information *Gates* teaches that 'even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.' *Gates* at 234, 103 S.Ct. at 2330, 76 L.Ed.2d at 545." *State v. Barnhardt*, 92 N.C. App. 94, 97, 373 S.E.2d 461, 463, *disc. review denied*, 323 N.C. 626, 374 S.E.2d 593 (1988).

Furthermore, the reliability of the informant is shown by the officers' sworn affidavit, which reflects that the informant told Officer Sikes that he (the informant) had used marijuana, thus admitting his (the informant's) possession and use of a controlled substance in the past. "Statements against penal interest carry their own indicia of credibility sufficient to support a finding of probable cause to search." *Beam*, 325 N.C. at 221, 381 S.E.2d at 330 (citing *Arrington*, 311 N.C. at 642, 319 S.E.2d at 260). In addition to his prior use of marijuana, the informant also stated that he had seen the cultivation of marijuana plants in the past. *Barnhardt*, 92 N.C. App. at 98, 373 S.E.2d at 463. Finally, the officers' investigation revealed that the informant correctly told Officer Sikes that defendant had been arrested on a prior occasion. Based upon our review of the information, *supra*, provided to the magistrate, we conclude that this information was sufficiently reliable.

[2] Next, our inquiry turns to defendant's contention that the evidence was "stale" because the affidavit stated that the reliable

informant had observed the marijuana plants growing "within the last 30 days." In *State v. Lindsey*, 58 N.C. App. 564, 565-66, 293 S.E.2d 833, 834 (1982), this Court stated that·

> [t]he test for "staleness" of information on which a search warrant is based is whether the facts indicate that probable cause exists at the time the warrant is issued. *Sgro v. United States*, 287 U.S. 206, 77 L.Ed. 260, 53 S.Ct. 138 (1932); *State v. King*, 44 N.C. App. 31, 259 S.E.2d 919 (1979). Common sense must be used in determining the degree of evaporation of probable cause. *State v. Louchheim*, 296 N.C. 314, 250 S.E.2d 630 (1979), *cert. denied*, 444 U.S. 836 (1980). "The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock . . . ." *Andresen v. Maryland*, 24 Md. App. 128, 172, 331 A.2d 78, 106, *cert. denied*, 274 Md. 725 (1975), aff'd, 427 U.S. 463, 49 L.Ed.2d 627, 96 S.Ct. 2737 (1976).

Our Supreme Court has stated that a number of variables are to be considered in determining whether probable cause still exists at the time a search warrant is issued, including *inter alia* the items to be seized and the character of the crime. *Louchheim*, 296 N.C. at 323, 250 S.E.2d at 636. If the marijuana was being grown for defendant's personal consumption, it is unlikely that he would consume such a large quantity within 30 days. Accordingly, at least a portion of it would likely remain in his home 30 days later when this search warrant was issued. Likewise, if the marijuana was being grown in defendant's home for purposes of sale, then the informant's statements indicate that defendant was engaged in the ongoing criminal activity of selling marijuana. *Beam*, 325 N.C. at 222, 381 S.E.2d at 330. *Compare State v. Newcomb*, 84 N.C. App. 92, 95, 351 S.E.2d 565, 567 (1987) (suppressing evidence arising from warrant where the officer's "affidavit contain[ed] a mere naked assertion that the informant at *some time* saw a 'room full of marijuana' growing in defendant's house" [emphasis added]). *See Barnhardt*, 92 N.C. App. at 98, 373 S.E.2d at 463 (discussing *Newcomb*). Furthermore, the officers' affidavit stated that defendant was suspected of *growing* marijuana using a "light system with automatic timers." Hence, from the presence of a lighting system and timers, objects requiring installation and not subject to ready mobility, the magistrate could reasonably infer that the evidence would likely remain in defendant's home 30 days later.

One may properly infer that equipment acquired to accomplish the crime and records of the criminal activity will be kept for some period of time. When the evidence sought is of an ongoing criminal business of a necessarily long-term nature, such as marijuana growing, rather than that of a completed act, greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time.

*U.S. v. Greany*, 929 F.2d 523, 525 (9th Cir. 1989) (citations omitted). *See State v. Louchheim*, 296 N.C. at 322-23, 250 S.E.2d at 635-36 (discussing probable cause in context of an ongoing business). We note that we find the information here not to be stale because the information concerned the informant's observation (within 30 days) of the *cultivation* of marijuana plants, the growth cycle of which lasts approximately 3 to 4 months according to the testimony presented at the suppression hearing. We further note that this factual situation differs substantially from an informant's observation of harvested or processed marijuana in a non-cultivation factual situation. *Compare Lindsey*, 58 N.C. App. at 567, 293 S.E.2d at 835 (non-cultivation case holding information stale where the police seized four ounces of marijuana stored in "plastic bags" from defendant's residence based upon "information concerning residential possession" received by the officer one year prior to the issuance of the warrant). We conclude that "there was a substantial basis for the magistrate to conclude that there was a fair probability that marijuana would be found at defendant's residence on the date the warrant was issued." *Beam*, 325 N.C. at 222, 381 S.E.2d at 330.

Accordingly, after having examined the reliability and timeliness of the information, we conclude that the evidence as a whole provided the magistrate a substantial basis for concluding that probable cause existed at the time the search warrant was issued. *Beam*, 325 N.C. at 221, 381 S.E.2d at 329.

"No more is required." *Rugendorf v. United States*, 376 U.S. 528, 533, 11 L.Ed.2d 887, 891, 84 S.Ct. 825, 828 (1964). *See also Andresen v. Maryland*, 427 U.S. 463, 49 L.Ed.2d 627, 96 S.Ct. 2737 (1976). Moreover, reviewing courts are to pay deference to judicial determinations of probable cause, *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509 (1964), and "the resolution of doubtful or marginal cases in this area

should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca, supra* at 109, 13 L.Ed.2d at 689, 85 S.Ct. at 746.

*Louchheim,* 296 N.C. at 324, 250 S.E.2d at 636-37.

[3] Finally, we conclude that, even assuming *arguendo* the information which served as the basis for the warrant was insufficient, the good faith exception to the exclusionary rule is applicable here. In *State v. Welch,* 316 N.C. 578, 588, 342 S.E.2d 789, 794-95 (1986), our Supreme Court stated:

> In *United States v. Leon,* 468 U.S. 897, 82 L.Ed.2d 677 (1984), the Supreme Court carved out a good faith exception to the exclusionary rule stating that it should not apply when officers acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate but subsequently found invalid. In *Leon* a search was conducted pursuant to a search warrant that was later determined to lack probable cause. In upholding the search, the Supreme Court stated that the exclusionary rule "operates as a 'judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved.'" 468 U.S. at 906, 82 L.Ed.2d at 687. The exclusionary rule was designed to deter police misconduct, not a judge's errors. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." 468 U.S. at 921, 82 L.Ed.2d at 697. The Supreme Court concluded in *Leon* that the "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918, 82 L.Ed.2d at 695. Since the officer in *Leon* reasonably relied on a warrant issued by a detached and neutral magistrate, the Supreme Court concluded that the exclusionary rule should not be applied and that the evidence obtained pursuant to that warrant should be admissible.

Here, the officers reasonably relied on the search warrant that was issued by a "detached and neutral magistrate" and took every reasonable step to comport with the fourth amendment requirements. *Welch,* 316 N.C. at 589, 342 S.E.2d at 795. Accordingly, we find no error.

No error.

Judges MARTIN and JOHN concur.