INMAN, Judge.
 

 *642
 
 Adam Robert Jackson ("Defendant") appeals from a Judgment Suspending Sentence following his plea of no contest to one count of
 
 *643
 
 manufacturing marijuana. On appeal, Defendant argues that the trial court erred in denying his motion to suppress evidence obtained pursuant to a search warrant because the warrant application was insufficient to support the magistrate's finding of probable cause. After careful review, we hold that the warrant application provided a substantial basis to support the magistrate's finding of probable cause. Accordingly, we affirm.
 

 I.
 
 Factual & Procedural Background
 

 On 30 January 2013, Detective Jessica Jurney and another officer with the Narcotics Division of the Iredell County Sheriff's Office conducted a knock-and-talk at the home of a person they had never met. The officers indicated to the person that she could face criminal charges based on her
 
 [1]
 
 possession of marijuana. The person ("confidential informant" or "informant") agreed to provide information regarding where she obtained the marijuana. The informant told Detective Jurney that she had purchased marijuana from Defendant, a male in his early 20s, "with long dark hair."
 

 The informant provided Defendant's name, stated that she had purchased marijuana at Defendant's residence on multiple occasions, and noted that she had most recently purchased marijuana from Defendant at his residence two days earlier. The informant explained that during her most recent purchase, Defendant asked her to wait for him in a front room and went into a bedroom located on the right side of his house. The informant then heard the sound of a key turning in a lock. Defendant returned with a mason jar containing marijuana and sold a portion of it to the informant.
 

 The informant told Detective Jurney that Defendant's residence was located off Old Mountain Road in a wooded area across from a development called "Old Mountain Village." The informant described Defendant's home as a "modular home/trailer." The informant then led Detective Jurney to a driveway with a mailbox marker that read 2099 Old Mountain Road. The informant explained to Detective Jurney that the driveway forked in two separate directions at the end and stated that Defendant's residence was located on the left side of the fork. Subsequently, Captain Clarence Harris of the Iredell County Sheriff's Office drove to the same location and confirmed that a light-colored modular home was located on the left side of a fork in the driveway.
 

 *644
 
 Detective Jurney searched the CJ LEADS database, a database wherein law enforcement officers can refer to DMV information or criminal charges, for "Adam Jackson." The search revealed that a person named "Adam Robert Jackson" resided at 2099 Old Mountain Road in Hiddenite, North Carolina, and was twenty-two years old. In the photograph, Adam Jackson had shoulder length brown hair and brown eyes.
 

 On 31 January 2013, Detective Jurney contacted Deputy Kelly Ward of the Narcotics Division of the Alexander County Sheriff's Office. Because the address was located in Alexander County, Detective Jurney notified Deputy Ward of all of the information that had been relayed to her by the informant. On that same day, Detective Jurney and Deputy Ward applied to the Alexander County Magistrate for a search warrant for Defendant's residence. As part of the warrant application, Deputy Ward submitted an affidavit in which he attached a statement by Detective Jurney detailing the information that the confidential informant had relayed to her. Deputy Ward's affidavit stated that in addition to receiving
 
 *508
 
 information from Detective Jurney, he had "received information on several occasions throughout the past year from concerned citizens in the area of the premise to be searched, about drug traffic mainly [m]arijuana at the premise to be searched." Deputy Ward also noted that he had searched Defendant's criminal history and discovered that Defendant was charged with possession of marijuana in December 2012
 
 [2]
 
 in Alexander County.
 

 An Alexander County Magistrate issued a search warrant for Defendant's residence, which law enforcement officers executed the same day. The search revealed "indoor grow equipment," marijuana, and "plants," which officers seized.
 

 On 24 June 2013, Defendant was indicted for possession with intent to manufacture, sell, and deliver marijuana; manufacturing marijuana; felony possession of a Schedule VI controlled substance; and maintaining a vehicle/dwelling/place for a controlled substance.
 
 [3]
 
 On
 
 *645
 
 19 November 2013, Defendant filed a motion to suppress evidence discovered as a result of the search of his residence.
 

 Defendant's motion was heard on 9 February 2015 by Judge Joseph N. Crosswhite in Alexander County Superior Court. Deputy Ward and Detective Jurney testified at the hearing. At the conclusion of the hearing, Judge Crosswhite denied Defendant's motion to suppress, and, on 13 March 2015, entered a written order to the same effect.
 

 Two days after the suppression hearing, on 11 February 2015, Defendant pled no contest to one count of driving while impaired and one count of manufacturing marijuana. Defendant was sentenced to 12 months imprisonment for the driving while impaired charge, and 6-17 months imprisonment for the manufacturing marijuana charge; however, both sentences were suspended for 30 months of supervised probation, subject to certain terms and conditions.
 

 II.
 
 Petition for Writ of Certiorari
 

 We initially address this Court's jurisdiction over this appeal. On 24 February 2015, Defendant filed a Notice of Appeal stating that he "appeals the Order of the Superior Court denying Defendant's motion to suppress all physical evidence seized by law enforcement officers during the search of [ ] Defendant's residence on the date of the alleged offense, entered in this action." The Notice of Appeal further specified that "[t]he right to this appeal was specifically reserved as part of Defendant's guilty plea."
 

 This Court has held that:
 

 [I]n order to properly appeal the denial of a motion to suppress after a guilty plea, a defendant must take two steps: (1) he must, prior to finalization of the guilty plea, provide the trial court and the prosecutor with notice of his intent to appeal the motion to suppress order, and (2) he must timely and properly appeal from the final judgment.
 

 State v. Cottrell
 
 ,
 
 234 N.C.App. 736
 
 , 739-40,
 
 760 S.E.2d 274
 
 , 277 (2014) ;
 
 see also
 
 N.C. Gen. Stat. § 15A-979(b) (2015) (providing that the denial of a motion to suppress evidence "may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilt[ ]").
 

 Here, Defendant gave notice to the State that he intended to appeal the denial of his motion to suppress, and the reservation of the right was noted in the transcript of his no contest plea, which provided:
 

 *646
 
 "Defendant expressly reserves the right to appeal the Court's denial of Defendant's Motion to Suppress, and his plea herein is conditioned upon his right to appeal that decision pursuant to
 
 *509
 
 [N.C. Gen. Stat. §] 15A-979(b)." However, Defendant's 24 February 2015 Notice of Appeal failed to indicate that he was appealing from the Judgment Suspending Sentence entered against him as a result of his 11 February 2015 plea of no contest, as is required by N.C. Gen. Stat. § 15A-979(b). Instead, Defendant's Notice of Appeal only indicated that he was appealing from the order denying his motion to suppress.
 

 On 5 September 2015, Defendant filed a petition for writ of certiorari, asking this Court to review the Judgment Suspending Sentence. "Whether to allow a petition and issue the writ of certiorari is not a matter of right and rests within the discretion of this Court."
 
 State v. Biddix
 
 , --- N.C.App. ----, ----,
 
 780 S.E.2d 863
 
 , 866 (2015) (citation omitted). North Carolina Rule of Appellate Procedure 21(a) provides:
 

 The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the trial court ruling on a motion for appropriate relief.
 

 N.C. R. App. P. 21. In
 
 State v. Cottrell
 
 , this Court exercised its discretion and granted the defendant's petition for writ of certiorari, "because it is apparent that the State was aware of defendant's intent to appeal the denial of the motion to suppress prior to the entry of defendant's guilty pleas and because defendant has lost his appeal through no fault of his own...."
 
 234 N.C.App. at 740
 
 ,
 
 760 S.E.2d at 277
 
 . Here, applying the same reasoning as this Court imposed in
 
 Cottrell
 
 , we grant Defendant's petition for writ of certiorari and address Defendant's appeal on the merits.
 

 III.
 
 Analysis
 

 Defendant contends that the trial court erred in denying his motion to suppress. We disagree.
 

 Our standard of review on an appeal from an order denying a motion to suppress is "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 

 *647
 

 State v. Johnson
 
 ,
 
 98 N.C.App. 290
 
 , 294,
 
 390 S.E.2d 707
 
 , 709 (1990) (quoting
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) ). The trial court's conclusions of law are reviewed
 
 de novo
 
 .
 
 State v. O'Connor
 
 ,
 
 222 N.C.App. 235
 
 , 238-39,
 
 730 S.E.2d 248
 
 , 251 (2012) (internal quotation marks omitted). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 168,
 
 712 S.E.2d 874
 
 , 878 (2011) (internal quotation marks and citation omitted).
 

 Whether probable cause exists to support issuance of search warrant by a magistrate is reviewed under the "totality of the circumstances" test established by the United States Supreme Court in
 
 Illinois v. Gates
 
 ,
 
 462 U.S. 213
 
 , 230,
 
 103 S.Ct. 2317
 
 , 2328,
 
 76 L.Ed.2d 527
 
 , 543 (1983), and adopted by the North Carolina Supreme Court in
 
 State v. Arrington
 
 ,
 
 311 N.C. 633
 
 , 641-43,
 
 319 S.E.2d 254
 
 , 259-261 (1984). Under the totality of the circumstances test:
 

 [th]e task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
 

 Arrington
 
 ,
 
 311 N.C. at 638
 
 ,
 
 319 S.E.2d at 257-58
 
 (quoting
 
 Gates
 
 ,
 
 462 U.S. at 238
 
 ,
 
 103 S.Ct. at 2332
 
 ,
 
 76 L.Ed.2d at
 
 548 ). " '[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' "
 
 State v. Riggs
 
 ,
 
 328 N.C. 213
 
 , 219,
 
 400 S.E.2d 429
 
 , 433 (1991) (emphasis omitted) (quoting
 
 Gates
 
 ,
 
 462 U.S. at
 
 243 n. 13,
 
 103 S.Ct. at
 
 2335 n. 13,
 
 76 L.Ed.2d at
 
 552 n. 13 ).
 

 *510
 
 Here, Defendant contests the following paragraph of the trial court's order denying Defendant's motion to suppress,
 

 In the present matter, this Court concludes that the search warrant was based on information from a reliable confidential informant who provided information that was both accurate and fresh. The information that was provided included a detailed description of the Defendant, where he lived, directions to his house, where the marijuana was kept, and how it was packaged. This information was verified by both officers from the Iredell County Sheriffs' [sic] Department and the Alexander County Sheriffs' [sic] Department. This Court also concludes that the statements made by the
 
 *648
 
 confidential informant were against her penile [sic] interest in that she admitted to purchasing and possessing marijuana from the Defendant in the past few days.
 

 Defendant challenges the trial court's findings regarding the information provided by the confidential informant and the verification of that information by law enforcement officers, arguing that it is not supported by competent evidence. Defendant contends that the balance of the challenged paragraph, comprised of conclusions of law, is not supported by the findings of fact.
 

 For the reasons discussed below, we disagree with Defendant's contentions. And although the order denying Defendant's motion to suppress omits a conclusion that the application for the search warrant supported a finding of probable cause, the trial court's findings of fact, other conclusions of law, and ultimate denial of Defendant's motion to suppress necessitate such a conclusion. Accordingly, we analyze the challenged findings and conclusions within the context of the larger issue before this Court-whether the facts and circumstances set forth in the application for the search warrant were sufficient to support a finding of probable cause.
 

 We start by considering the reliability of the information provided in the search warrant application. "[A] magistrate is entitled to draw reasonable inferences from the material supplied to him by an applicant for a warrant."
 
 State v. Sinapi
 
 ,
 
 359 N.C. 394
 
 , 399,
 
 610 S.E.2d 362
 
 , 365 (2005) (citation omitted). The North Carolina Supreme Court has held that "great deference should be paid a magistrate's determination of probable cause and that after-the-fact scrutiny should not take the form of a
 
 de novo
 
 review."
 
 Arrington
 
 ,
 
 311 N.C. at 638
 
 ,
 
 319 S.E.2d at 258
 
 . However, this deference is not unlimited.
 
 State v. Benters
 
 ,
 
 367 N.C. 660
 
 , 665,
 
 766 S.E.2d 593
 
 , 598 (2014). "[U]nder the totality of the circumstances test, a reviewing court must determine 'whether the evidence as a whole provides a substantial basis for concluding that probable cause exists.' "
 
 Sinapi
 
 ,
 
 359 N.C. at 398
 
 ,
 
 610 S.E.2d at 365
 
 (quoting
 
 State v. Beam
 
 ,
 
 325 N.C. 217
 
 , 221,
 
 381 S.E.2d 327
 
 , 329 (1989) ). Therefore, "[a] reviewing court has the duty to ensure that a magistrate does not abdicate his or her duty by 'merely ratifying the bare conclusions of affiants.' "
 
 Benters
 
 ,
 
 367 N.C. at 665
 
 ,
 
 766 S.E.2d at 598
 
 (citation omitted).
 

 This Court has held:
 

 When probable cause is based on an informant's tip a totality of the circumstances test is used to weigh the reliability or unreliability of the informant. Several factors are used
 
 *649
 
 to assess reliability including: (1) whether the informant was known or anonymous, (2) the informant's history of reliability, and (3) whether information provided by the informant could be and was independently corroborated by the police.
 

 State v. Green
 
 ,
 
 194 N.C.App. 623
 
 , 627,
 
 670 S.E.2d 635
 
 , 638 (2009) (internal quotation marks and citation omitted). We therefore assess the reliability of the information provided by the confidential informant under the totality of the circumstances test, weighing these reliability factors.
 

 A. Confidential and Reliable Tip Standard
 

 As an initial matter, because the affidavit of Deputy Ward is based in part on information provided to Detective Jurney from an informant unknown to Deputy Ward, "we must determine the reliability of the information by assessing whether the information came from an informant who was merely anonymous or one who could be classified
 
 *511
 
 as confidential and reliable."
 
 Benters
 
 ,
 
 367 N.C. at 665
 
 ,
 
 766 S.E.2d at 598
 
 (citation omitted). Information from an anonymous source is afforded less weight in the totality of circumstances than information that is confidential and reliable.
 
 See
 

 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 205-06,
 
 539 S.E.2d 625
 
 , 629 (2000).
 

 In order for a reviewing court to weigh an informant's tip as confidential and reliable, "evidence is needed to show indicia of reliability[.]"
 
 Id.
 
 at 204,
 
 539 S.E.2d at 628
 
 . Indicia of reliability may include statements against the informant's penal interests and statements from an informant with a history of providing reliable information.
 
 Benters
 
 ,
 
 367 N.C. at 665
 
 ,
 
 766 S.E.2d at 598
 
 . Even if an informant does not provide a statement against his/her penal interest and does not have a history of providing reliable information to law enforcement officers, the Supreme Court has suggested that "other indication[s] of reliability" may suffice.
 
 Hughes,
 

 353 N.C. at 204
 
 ,
 
 539 S.E.2d at 628
 
 .
 

 "When sufficient indicia of reliability are wanting," a reviewing court uses the anonymous tip standard to evaluate the reliability of information provided by an informant.
 
 Benters
 
 ,
 
 367 N.C. at 666
 
 ,
 
 766 S.E.2d at 598
 
 (citation omitted).
 

 An anonymous tip, standing alone, is rarely sufficient, but the tip combined with corroboration by the police could show indicia of reliability that would be sufficient to pass constitutional muster. Thus, a tip that is somewhat lacking in reliability may still provide a basis for probable
 
 *650
 
 cause if it is buttressed by sufficient police corroboration. Under this flexible inquiry, when a tip is less reliable, law enforcement officers carry a greater burden to corroborate the information.
 

 Id.
 

 at 666
 
 ,
 
 766 S.E.2d at 598-99
 
 (internal quotation marks and citations omitted). The North Carolina Supreme Court has utilized the anonymous tip standard in
 
 State v. Hughes,
 

 353 N.C. 200
 
 ,
 
 539 S.E.2d 625
 
 (2000), and
 
 State v. Benters,
 

 367 N.C. 660
 
 ,
 
 766 S.E.2d 593
 
 (2014).
 

 In
 
 Hughes
 
 , a "confidential, reliable informant" provided a tip to the captain of the Onslow County Sheriff's Department regarding the defendant's possession of marijuana and cocaine.
 
 353 N.C. at 201-02
 
 ,
 
 539 S.E.2d at 627
 
 . The captain, who received the tip by phone, relayed the information to a detective with the Jacksonville Police Department.
 
 Id.
 
 at 201,
 
 539 S.E.2d at 627
 
 . The detective then relayed the information to another detective within the department.
 

 Id.
 

 The two Jacksonville Police Department detectives subsequently conducted an investigatory stop of the defendant and discovered drugs on his person.
 
 Id.
 
 at 202-03,
 
 539 S.E.2d at 628
 
 . The North Carolina Supreme Court applied the anonymous tip standard and reversed the defendant's criminal conviction because the informant had not been used to give accurate information in the past and because the captain-the only officer who spoke with the informant-did not convey to the other officers how he knew the informant or why the informant was reliable.
 
 Id.
 
 at 204,
 
 539 S.E.2d at 629
 
 . The Supreme Court further noted that the statement of the informant was not against his/her penal interest, and that "[t]he only evidence showing that the identity of this informant was known is [the captain's] conclusory statement that the informant was confidential and reliable."
 
 Id.
 
 at 204,
 
 539 S.E.2d at 627
 
 . Accordingly, the Supreme Court applied the anonymous tip standard in assessing the reliability of the informant, holding that "[w]ithout more than the evidence presented, we cannot say there was sufficient indicia of reliability to warrant use of the confidential and reliable informant standard."
 
 Id.
 
 at 205,
 
 539 S.E.2d at 629
 
 .
 

 In
 
 Benters
 
 , after receiving a tip from an informant face-to-face, a detective with the Franklin County Sheriff's Office relayed to a lieutenant with the Vance County Sheriff's Office that a residence owned by the defendant in Vance County was being used as "an indoor marijuana growing operation."
 
 367 N.C. at 661-62
 
 ,
 
 766 S.E.2d at 596
 
 . The lieutenant who received this third-hand information then applied for a search warrant, in which he described the informant as a "confidential and reliable source of information."
 

 Id.
 

 at 662
 
 ,
 
 766 S.E.2d at 596
 
 . After noting that the information provided by the informant did not contain a statement
 
 *651
 
 against his/her penal interest and also noting that
 
 *512
 
 the informant did not have a track record, the Supreme Court assessed whether the face-to-face meeting between the informant and the detective who initially received the tip provided additional indicia of reliability.
 

 Id.
 

 at 665-67
 
 ,
 
 766 S.E.2d at 598-99
 
 . Although that detective received the tip through a face-to-face meeting with the informant, as opposed to by phone as in
 
 Hughes
 
 , the Supreme Court still applied the anonymous tip standard, holding that the affiant officer had nothing more than another officer's " 'conclusory statement that the informant was confidential and reliable[.]' "
 

 Id.
 

 at 668
 
 ,
 
 766 S.E.2d at 600
 
 (quoting
 
 Hughes
 
 ,
 
 353 N.C. at 204
 
 ,
 
 539 S.E.2d at
 
 629 ). The Supreme Court explained further why the anonymous tip standard applied:
 

 [T]he affidavit here fails to establish the basis for [the Franklin County detective's] appraisal of his source's reliability, including the source's demeanor or degree of potential accountability. The affidavit does not disclose whether [the Franklin County detective] met his source privately, or publicly and in uniform such that the source could risk reprisal. Moreover, nothing in the affidavit suggests the basis of the source's knowledge.
 

 Id.
 

 at 668-69
 
 ,
 
 766 S.E.2d at 600
 
 .
 

 Turning to the case before us, in determining which standard applies to the confidential informant's tip, we note that the informant did not have a history of providing reliable information in the past. The trial court found in pertinent part:
 

 Detective Ward indicated that he had never met with the confidential informant and was relying upon her trustworthiness from Detective Sergeant Jurney. Detective Sergeant Jurney indicated that she had never worked with the confidential informant before, but the information she provided was detailed and accurate as to a description of the Defendant, where the marijuana was located, and where the Defendant lived.
 

 The confidential informant's lack of a "track record" however, does not require this Court to consider the tip anonymous. "What is popularly termed a 'track record' is only one method by which a confidential source of information can be shown to be reliable for purposes of establishing probable cause."
 
 Riggs
 
 ,
 
 328 N.C. at 219
 
 ,
 
 400 S.E.2d at 433
 
 . Instead, in determining whether to apply the anonymous tip standard or the confidential and reliable tip standard, we assess whether the
 
 *652
 
 information provided by the informant includes a statement against her penal interest and other indicia of her reliability.
 

 "Whether a statement is in fact against interest must be determined from the circumstances of each case."
 
 Williamson v. United States
 
 ,
 
 512 U.S. 594
 
 , 601,
 
 114 S.Ct. 2431
 
 , 2436,
 
 129 L.Ed.2d 476
 
 , 484 (1994). Here, in the order denying Defendant's motion to suppress, the trial court concluded that "the statements made by the confidential informant were against her penile [sic] interest in that she admitted to purchasing and possessing marijuana from the Defendant in the past few days." This conclusion is supported by the following findings of the trial court that: "two days prior [to her discussion with Detective Jurney], the confidential informant had been to the home of Adam Robert Jackson and purchased marijuana[;] ... "the confidential informant had purchased marijuana from inside the home[;] and [ ] the confidential informant had bought marijuana on several prior occasions from the Defendant at the same residence." These findings are supported by the search warrant application and the officers' testimony at the suppression hearing.
 

 "Statements against penal interest carry their own indicia of credibility sufficient to support a finding of probable cause to search."
 
 Beam
 
 ,
 
 325 N.C. at 221
 
 ,
 
 381 S.E.2d at 330
 
 . This Court and the Supreme Court have categorized an informant's statement implicating that the informant had used and/or purchased marijuana in the past as a statement against the informant's penal interest, for the purpose of weighing reliability
 
 . See, e.g.,
 

 State v. Witherspoon
 
 ,
 
 110 N.C.App. 413
 
 , 418,
 
 429 S.E.2d 783
 
 , 786-87 (1993) (categorizing an informant's statement as one against his penal interest where the informant told an officer that he had used marijuana, "thus admitting [the informant's] possession and use of a controlled substance in the past");
 
 Arrington
 
 ,
 
 311 N.C. at 641
 
 ,
 
 319 S.E.2d at 259
 
 (holding that "[t]he information
 
 *513
 
 supplied by the first informant establishes, against the informant's penal interest, that he had purchased marijuana from the defendant[ ]").
 

 Defendant contends that the confidential informant's statement was not against her penal interest because it "was motivated by a desire to curry favor with the authorities to help her avoid conviction on her own charges." In
 
 Arrington
 
 , the North Carolina Supreme Court refuted this argument:
 

 Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the
 
 *653
 
 form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a "break" does not eliminate the residual risk and opprobrium of having admitted criminal conduct.
 

 311 N.C. at 641
 
 ,
 
 319 S.E.2d at 259
 
 (quoting
 
 United States v. Harris
 
 ,
 
 403 U.S. 573
 
 , 583-84,
 
 91 S.Ct. 2075
 
 , 2082,
 
 29 L.Ed.2d 723
 
 , 734 (1971) ).
 

 Here, the record evidence does not indicate that the confidential informant claimed that she was unaware that the substance that she possessed was marijuana. To the contrary, the statement of Detective Jurney, included in the search warrant application, provides that "[t]he confidential informant told Det. Sgt. Jurney that he/she, along with other individuals, had purchased marijuana from [Defendant] numerous times at that residence." Even if the confidential informant had been motivated to provide this information by a desire to curry favor with Detective Jurney and potentially help her avoid conviction, she still would have incurred the "residual risk" of having admitted purchasing, and in turn, possessing marijuana. Accordingly, we hold that the information provided was against the confidential informant's penal interest.
 

 Noting that the confidential informant did not have a track record of providing reliable information, but did make statements against her penal interest, we consider other indicia of the confidential informant's credibility and reliability, including the face-to-face nature of the officer's encounter with her and the confidential informant's first-hand knowledge of the information.
 

 The information that Detective Jurney relayed to Deputy Ward regarding the Defendant's criminal conduct was first ascertained during a face-to-face encounter between Detective Jurney and the confidential informant. " 'The police officer making the affidavit may do so in reliance upon information reported to him by other officers in the performance of their duties.' "
 
 Witherspoon
 
 ,
 
 110 N.C.App. at 418
 
 ,
 
 429 S.E.2d at 785-86
 
 (quoting
 
 State v. Vestal
 
 ,
 
 278 N.C. 561
 
 , 576,
 
 180 S.E.2d 755
 
 , 765 (1971) ). Here, Deputy Ward's affidavit did not merely rely on the information relayed by Detective Jurney. Instead, Detective Jurney accompanied Deputy Ward to apply for the search warrant and provided a written statement as part of the warrant application. The face-to-face nature of Detective Jurney's encounter with the confidential informant, outlined in her written statement, distinguishes this case from
 
 Hughes
 
 and
 
 Benters.
 
 Here, Detective Jurney had the opportunity to assess the
 
 *654
 
 informant's demeanor during their initial encounter and during their drive to confirm Defendant's address. Additionally, the nature of this face-to-face conversation between Detective Jurney and the informant "significantly increased the likelihood that [the informant] would be held accountable if her tip proved to be false."
 
 State v. Allison
 
 ,
 
 148 N.C.App. 702
 
 , 705,
 
 559 S.E.2d 828
 
 , 830 (2002).
 

 The confidential informant had first-hand knowledge of the facts she provided. Detective Jurney's written statement detailed the manner in which the confidential informant came to observe the information that she then relayed, specifically acknowledging that the informant had purchased marijuana from Defendant's residence just two days prior. The informant provided detailed information, including that during this most recent purchase of marijuana, Defendant went into a bedroom located on the right side of his house, turned a key in a lock, and returned
 
 *514
 
 with a mason jar containing marijuana. By contrast, the applications for the search warrants at issue in
 
 Hughes
 
 and
 
 Benters
 
 failed to explain how the informants in those cases had become aware of the defendants' criminal activity. In addition to Deputy Jurney's detailed statement, Deputy Ward's affidavit explained specific circumstances underlying the search warrant application sufficient for an assessment of the confidential informant's reliability.
 

 For the aforementioned reasons, we evaluate the reliability of the information provided by the informant under the confidential and reliable standard.
 

 B. Police Corroboration
 

 Another factor in assessing the reliability or unreliability of an informant is "whether information provided by the informant could be and was independently corroborated by the police."
 
 Green
 
 ,
 
 194 N.C.App. at 627
 
 ,
 
 670 S.E.2d at 638
 
 . As explained
 
 supra
 
 , information provided by the informant in this case is more reliable than a tip from an anonymous source. "On the fluid balance prescribed by the Supreme Court, a less specific or less reliable tip requires greater corroboration to establish probable cause."
 
 Benters
 
 ,
 
 367 N.C. at 669-70
 
 ,
 
 766 S.E.2d at 601
 
 (citation omitted).
 

 Both Detective Jurney and Deputy Ward corroborated the confidential informant's tip in various respects. Detective Jurney searched the CJ LEADS database for "Adam Jackson" and found a person named Adam Robert Jackson with the listed address of 2099 Old Mountain Road-the name and location provided by the informant. Detective
 
 *655
 
 Jurney's database search also corroborated the informant's description of Defendant's appearance and age.
 

 In addition to providing an address and general description of the neighborhood of Defendant's residence, the informant accompanied Detective Jurney to a mailbox marker that read 2099 Old Mountain Road, and explained that Defendant's residence was down a private driveway, located on the left side of a fork. After Detective Jurney relayed this information to the Alexander County Sheriff's Office, Captain Clarence Harris drove to the address and ventured down the private driveway, where he confirmed the exact location of Defendant's residence consistent with the confidential informant's description.
 

 Deputy Ward, after receiving the aforementioned information from Detective Jurney, conducted a criminal record search and discovered that "Adam Robert Jackson" had been charged with possession of marijuana just over a month earlier, on 22 December 2012. Deputy Ward also noted that he had "received information on several occasions throughout the past year from concerned citizens in the area of the premise to be searched, about drug traffic mainly [m]arijuana at the premise to be searched."
 

 Defendant challenges the trial court's finding that law enforcement officers verified information regarding where the marijuana was kept and how it was packaged. We agree that this finding does not corroborate the reliability of the information because the officers did not locate the marijuana before applying for the search warrant. In order to carry weight as corroborating evidence for the purpose of determining the reliability of a tip, information must have been presented to the magistrate who issued the search warrant.
 
 See
 
 N.C. Gen. Stat. § 15A-245 (2015) (providing that "information other than that contained in the affidavit may not be considered by the issuing official in determining whether probable cause exists for the issuance of the warrant unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official[ ]");
 
 see also
 

 Benters
 
 ,
 
 367 N.C. at 673
 
 ,
 
 766 S.E.2d at
 
 603 ;
 
 Hughes
 
 ,
 
 353 N.C. at 208-09
 
 ,
 
 539 S.E.2d at
 
 631-32 ;
 
 State v. Brown
 
 ,
 
 199 N.C.App. 253
 
 , 258-59,
 
 681 S.E.2d 460
 
 , 464-65 (2009) ;
 
 State v. Holmes
 
 ,
 
 142 N.C.App. 614
 
 , 621,
 
 544 S.E.2d 18
 
 , 23 (2001) ;
 
 State v. Earhart
 
 ,
 
 134 N.C.App. 130
 
 , 133-34,
 
 516 S.E.2d 883
 
 , 886 (1999). However, we hold that the trial court's other findings regarding the officers' verification of Defendant's physical appearance, address, and specific directions to Defendant's residence are supported by competent evidence and are sufficient to support the trial court's conclusion that probable cause was established.
 

 *515
 

 *656
 

 C. Freshness of Tip
 

 We also consider the freshness of the confidential informant's information. The informant provided Deputy Ward with detailed information regarding her purchase of marijuana from Defendant just two days prior. The informant relayed specific details, including witnessing Defendant go into a bedroom located on the right side of his residence, hearing the sound of a key turning in a lock, and observing Defendant return to the room where she was waiting with a mason jar filled with marijuana. In the order denying Defendant's motion to suppress, the trial court made findings of fact encompassing all of this information.
 

 The passage of two days between an informant's observation of criminal activity and an issuance of a search warrant bolsters the reliability of a tip.
 
 See
 

 State v. Singleton
 
 ,
 
 33 N.C.App. 390
 
 , 392,
 
 235 S.E.2d 77
 
 , 79 (1977) (holding that because the affidavit "narrowed down the informant's observation to within 48 hours of the time the warrant was obtained[,] ... the magistrate, acting upon this information, could reasonably conclude that there was probable cause to believe that the drugs were still in defendant's possession[ ]"). Accordingly, we hold that the timely nature of the informant's tip provides additional indicia of reliability.
 

 For these same reasons, we hold that the conclusion of law challenged by Defendant that "the search warrant was based on information from a reliable confidential informant who provided information that was both accurate and fresh[,]" is supported by the trial court's findings of fact, which, in turn, are supported by competent evidence.
 

 IV.
 
 Conclusion
 

 In assessing the reliability of the information provided by the informant under the confidential and reliable tip standard, we consider that the information was obtained first-hand, that it was against the informant's penal interest, and that it was timely and not stale. Additionally, we hold that Detective Jurney and Deputy Ward's corroboration of this information was adequate to support a finding of probable cause. Accordingly, under the totality of the circumstances test, we hold that the application for the search warrant was sufficient to support the magistrate's finding of probable cause.
 

 AFFIRMED.
 

 Judge STEPHENS concurs.
 

 Judge HUNTER, JR. concurs in part, dissents in part, by separate opinion.
 

 HUNTER, JR., Robert N., Judge, concurring in part, dissenting in part.
 

 *657
 
 As an initial matter, I join the majority in granting Defendant's petition for writ of
 
 certiorari
 
 . However, I respectfully dissent from the majority in favor of reversing the trial court.
 

 Reviewing the totality of the circumstances, and all of the record evidence, no probable cause existed for a warrant to issue in this case.
 
 See
 

 State v. Sinapi
 
 ,
 
 359 N.C. 394
 
 , 398,
 
 610 S.E.2d 362
 
 , 365 (2005) (quoting
 
 State v. Beam
 
 ,
 
 325 N.C. 217
 
 , 221,
 
 381 S.E.2d 327
 
 , 329 (1989) ). To uphold my "duty to ensure that a magistrate does not abdicate his or her duty by 'merely ratifying the bare conclusions of affiants,' " I detail the following record evidence of the events leading up to Deputy Ward's search warrant application.
 
 State v. Benters
 
 ,
 
 367 N.C. 660
 
 , 665,
 
 766 S.E.2d 593
 
 , 598 (2014) (internal quotation marks and citation omitted).
 

 As the majority states, Detective Jurney spoke with the confidential informant, whom she had never met before, during a knock-and-talk on 30 January 2013. Detective Jurney performed this knock-and-talk with another Iredell County narcotics detective in connection with an unrelated criminal case. No charges were ever filed against the confidential informant, though she admitted to previously purchasing some quantity of marijuana from Defendant on a prior occasion.
 

 The next day, on 31 January 2013, the confidential informant directed officers to Defendant's residence. She identified Defendant's home and discussed the details of her previous marijuana purchase. She described Defendant's physical appearance and age. Officers confirmed Defendant's residency and past appearance using CJ LEADS.
 

 Thereafter, Deputy Jurney relayed the information to Deputy Kelly Ward of the Alexander
 
 *516
 
 County Sheriff's Office because Defendant's residence is located in Deputy Ward's jurisdiction. Deputy Ward attached Deputy Jurney's affidavit to a search warrant application to search Defendant's home.
 

 At the suppression hearing, Detective Jurney testified she did not remember saying "[to the confidential informant] that if [she] did not cooperate ... that [her] daughter would be removed from her custody." Detective Jurney testified the confidential informant stated she
 
 *658
 
 bought marijuana from Defendant after officers "indicated ... [that] the confidential informant [ ] was facing criminal charges herself."
 

 According to Detective Jurney, "high school kids" contacted her "out of the blue" "on several occasions throughout [January 2012 through January 2013]." The students voiced concern about their friend who "[bought] drugs and us[ed] cocaine" from Defendant. The record discloses no information about these individuals, the number of times they contacted Detective Jurney, or the circumstances surrounding their conversations with Detective Jurney.
 

 Prior to the search, officers knew Defendant matched the confidential informant's description of him, based upon his past photo in the CJ LEADS system. Officers also knew Defendant lived at the home the confidential informant identified because of his listed residence on CJ LEADS. They also knew Defendant was charged with possession of marijuana two months prior in December 2012. Apart from this, the officers did not corroborate the confidential informant's information about Defendant's marijuana business.
 

 This Court, and our Supreme Court, have upheld searches of suspected drug traffickers' residences because "officers [ ] discovered some specific and material connection between drug activity and the place to be searched."
 
 State v. Allman
 
 , --- N.C.App. ----, ----,
 
 781 S.E.2d 311
 
 , 317 (2016). Examples of this include: pulling a suspect's trash that is placed at the curb and uncovering several marijuana plants,
 
 Sinapi
 
 ,
 
 359 N.C. at 395
 
 ,
 
 610 S.E.2d at
 
 363 ; performing controlled drug buys at the suspect's residence using confidential sources,
 
 State v. Riggs
 
 ,
 
 328 N.C. 213
 
 , 215-16,
 
 400 S.E.2d 429
 
 , 431 (1991) ; and staking out the suspect's residence and observing a high volume traffic pattern "with visitors only staying [inside] for about one minute" and observing several persons being arrested during that time period for drug possession "as they exited the suspect residence,"
 
 State v. Crawford
 
 ,
 
 104 N.C.App. 591
 
 , 596,
 
 410 S.E.2d 499
 
 , 501 (1991).
 

 The verb "corroborate" means, "To strengthen or confirm; to make more certain."
 
 Black's Law Dictionary
 
 (10th ed. 2014). A witness's testimony is said to be corroborated when "it is shown to correspond with the representation of some other witnesses, or to comport with some facts otherwise known or established."
 
 Black's Law Dictionary
 
 344 (6th ed. 1990). Here, the officers did not corroborate the confidential informant's information. The officers corroborated Defendant's appearance, history of marijuana possession, residence, and the confidential informant's ability to navigate to the residence. The officers did not perform
 
 *659
 
 any controlled drug buys, observe a large number of visitors that is consistent with an ongoing marijuana operation, pull Defendant's trash to find marijuana or marijuana plants, or review Defendant's electricity and water consumption to corroborate any suspicion of marijuana manufacturing. Rather, the officers applied for a search warrant using a previously unknown informant's statements regarding her past behavior, which were made after the officers told her she was facing criminal charges, and were possibly made after officers threatened to take her daughter from her.
 

 For the Fourth Amendment to have any effect, officers should corroborate the information given to them in circumstances like these. The confidential informant's information and the information in Deputy Jurney's affidavit, taken in light of the totality of the circumstances, do not provide a substantial basis for concluding that probable cause exists.
 
 Sinapi
 
 ,
 
 359 N.C. at 398
 
 ,
 
 610 S.E.2d at 365
 
 (quoting
 
 State v. Beam
 
 ,
 
 325 N.C. 217
 
 , 221,
 
 381 S.E.2d 327
 
 , 329 (1989) ). Accordingly, I must respectfully dissent.
 

 [1]
 

 Defendant's brief notes that the suppression hearing seemed to indicate that the confidential informant was female. For this reason, and for ease of reading, we will refer to her as such in this opinion.
 

 [2]
 

 Deputy Ward's affidavit indicates that Defendant was charged with possession of marijuana on 22 December 2013-nearly a year in the future from the date of the warrant application. However, at the hearing on Defendant's motion to suppress, Deputy Ward testified that this was a clerical error in the application, and that the information he obtained reflected that Defendant had been charged in December 2012. Defendant's counsel acknowledged the charge and the correct date.
 

 [3]
 

 On 24 June 2013, Defendant was also indicted for driving while impaired; possession with intent to manufacture, sell, and deliver marijuana; simple possession of a Schedule VI controlled substance; and possession of drug paraphernalia. These charges stem from an incident occurring 22 December 2012.